John P. Margiotta
Laura Popp-Rosenberg
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
866 United Nations Plaza
New York, New York 10017
Tel: (212) 813-5900
*jmargiotta@frosszelnick.com*
*lpopp-rosenberg@frosszelnick.com*

Attorneys for Plaintiffs



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

CARTIER INTERNATIONAL AG and
CARTIER, a division of RICHEMONT NORTH
AMERICA,

                    Plaintiffs,

            v.

ILS HOLDINGS, LLC and SWISS WATCH
INTERNATIONAL, INC d/b/a THE SWI
GROUP,

                    Defendants.

---------------------------------------------------------------x

    :
    :
    :
    :
    :
    :
    :
    :
    :
    :

Civil Action No. _____

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs, for their Complaint against Defendants, allege as follows:

## SUBSTANCE OF THE ACTION

1.      Plaintiff Cartier International AG, operating in the United States through Plaintiff

Cartier, a division of Richemont North America, is one of the world's most renowned luxury

watch, jewelry and accessory design houses. For more than a century, products bearing the

CARTIER mark have been highly regarded throughout the world as finely crafted works of art.

Today, the CARTIER name represents one of the world's most prestigious and sought-after

brands.

2.      Defendants ILS Holdings, LLC and Swiss Watch International, Inc. d/b/a The SWI Group (together, "Defendants") are related companies that operate watch, jewelry, clothing and accessory wholesale and retail businesses.  Recently, Defendants have attempted to establish themselves as companies offering designer goods at deeply discounted prices via "exclusive members only shopping."  However, Defendants' deep discounts apparently come at a price.  Despite the repeated claims on Defendants' websites EditorsCloset.com and IvoryTrunk.com that their merchandise is "brand new" and that they do not sell refurbished items, Defendants have sold and are selling used, refurbished and/or damaged CARTIER watches.  Defendants also have sold CARTIER brand goods shipped in damaged packaging and/or accompanied by defaced and damaged Cartier Certificates of Authenticity.  In addition, Defendants fail to adequately disclose to their customers that the CARTIER products they sell are not backed by Cartier's manufacturer's warranty, even going so far as to include Cartier's warranty booklet along with the CARTIER merchandise they sell, which would certainly lead consumers to believe that the watches are covered by the manufacturer's warranty.

3.      Defendants' actions, as noted above and as further described herein, are causing immediate and irreparable harm to the CARTIER brand and trademark, and also are harming consumers.  To redress the harm being done to Plaintiffs and to the public, Plaintiffs bring claims for false advertising and unfair competition under Section 43(a)(1)(A) and (B) of the United States Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. § 1125(a)(1)(A) & (B); trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); and related claims under New York's statutory and common law.  Plaintiffs seek injunctive and monetary relief.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction under Section 39 of the Lanham Act, 15 U.S.C.

§ 1121, and under Sections 1331 and 1338(a) and (b) of the Judicial Code, 28 U.S.C. §§ 1331,

1338(a) & (b), and under principles of pendent jurisdiction.  Supplemental jurisdiction exists

over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

5.     This Court has personal jurisdiction over Defendants under New York Civil

Practice Law and Rules §§ 301 and 302(a) because, upon information and belief, (i) Defendants

have transacted business in New York and contracted to supply goods or services in New York;

and/or (ii) Defendants have committed infringing acts outside of New York causing injury to

Plaintiffs in New York and Defendants regularly do or solicit business in New York, and/or

derive substantial revenue from goods used or services rendered in New York, and/or expect or

reasonably should expect their infringing conduct to have consequences in New York and derive

substantial revenue from interstate commerce.

6.     Venue is proper in this District under Section 1391(b) of the Judicial Code, 28

U.S.C. § 1391(b), because a substantial part of the events giving rise to the claims occurred in

this District, because Defendants are deemed to reside in this District by virtue of being subject

to personal jurisdiction here and/or because Plaintiffs are suffering harm in this District.

## THE PARTIES

7.     Plaintiff Cartier International AG is a public limited company organized and

existing under the laws of Switzerland, having its principal place of business at Hinterbergstrasse

22, 6330 Cham, Switzerland.

8.     Plaintiff Cartier, a division of Richemont North America, Inc., is a corporation

organized and existing under the laws of the State of Delaware, having its principal place of

business at 653 Fifth Avenue, New York, New York 10022-5910.  Cartier, a division of

Richemont North America, Inc., is the exclusive licensee of CARTIER brand products in the

United States.  Hereinafter, Plaintiff Cartier International AG and Plaintiff Cartier, a Division of

Richemont North America, Inc., are referred to together as "Cartier."

        9.      Upon information and belief, Defendant ILS Holdings, LLC ("ILS") is a Florida

limited liability company with a principal place of business at 101 S. State Road 7, Suite 201,

Hollywood, Florida 33023.  Upon information and belief, ILS owns and operates the domain

name EditorsCloset.com and owns and operates the website associated therewith.

        10.     Upon information and belief, Swiss Watch International, Inc. d/b/a The SWI

Group ("SWI") is a Florida corporation with a principal place of business at 101 S. State Road 7,

Suite 201, Hollywood, Florida 33023.  Upon information and belief, SWI owns the domain name

IvoryTrunk.com and owns and operates the website associated therewith.

        11.     Upon information and belief, ILS and SWI are owned, operated and directed by

the same or overlapping principles and officers.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

I.     CARTIER AND ITS BUSINESS

        12.     Cartier is a world-famous supplier of fine jewelry and luxury watches and

accessories, all sold under the CARTIER name and mark.

        13.     Founded in 1847 by Louis-François Cartier, Cartier has built a reputation for fine

craftsmanship in the watch and jewelry field.  Through over 160 years of use, Cartier has

established its CARTIER name and mark as synonymous with high-quality, well-crafted and

exquisitely designed watches and jewelry.  Today, the company offers a wide range of products

including timepieces, fine jewelry and accessories.  Cartier's commitment to innovation in

design and function, as well as its use of only the finest materials, have brought it renown as a leading maker of luxury goods.

A.   *Cartier's Marks*

14.   Among the trademarks owned and used by Cartier is the world-famous CARTIER trademark, which has been used continuously in the United States in connection with the advertising and sale of fine jewelry and watches since at least as early as 1859.  The CARTIER trademark is the subject of, among other registrations, U.S. Trademark Registration No. 759,201, registered on October 29, 1963, and, in stylized form, U.S. Trademark Registration No. 411,975. Printouts from the online database of the United States Patent and Trademark Office showing the particulars of these registrations are attached hereto as Exhibit A.  These registrations are valid, subsisting and in full force and effect and have become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and therefore serve as conclusive evidence of the validity of the CARTIER mark, of the registration of the mark, and of Cartier's exclusive right to use the mark in commerce on or in connection with the products for which the mark is registered, as provided by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).

B.   *Cartier's Quality Control*

15.   Cartier maintains strict quality control over products bearing the CARTIER mark. To ensure the quality of CARTIER products, Cartier must necessarily exercise quality control over the entire process, from manufacturing to packaging, from distribution through sale and even through repair, when necessary.

16.   Cartier takes steps to ensure that the manufacturing process behind its products produces pieces of only the highest quality, befitting the company's luxury image.  Cartier manufactures many of its products itself, including special order jewelry pieces and watches.

For those pieces that are manufactured by third parties, Cartier maintains the strictest quality control. Before a workshop is permitted to craft products for Cartier, it must pass through a rigorous vetting process, and every single piece produced by a workshop is sent to a central control unit to ensure the piece's conformity to Cartier's exacting standards.

17.    Once a manufactured piece has been approved as conforming to Cartier's standards, the piece is marked not only with the CARTIER brand, but also with other indicia of authenticity, including a unique serial number. The serial number allows Cartier to track the origin, distribution, sales and repair history of each particular item, and is critical in protecting the marketplace from counterfeit products. Cartier's use of unique serial numbers on all of its products is important for maintaining the integrity of CARTIER products and, consequently, the CARTIER brand.

18.    Of course, the CARTIER brand image is not maintained solely through the manufacture of high quality pieces. Part and parcel of the exquisite CARTIER product is the luxury CARTIER packaging in which pieces are sold to consumers. The characteristic red box with gold embellishments and white satin lining in which CARTIER products come packaged has become a hallmark of the brand and ensures that CARTIER products reach customers without damage and in a style that reflects the company's image.

19.    Having expended so much time and expense perfecting its product and packaging, Cartier closely oversees the sales process to ensure that customers shopping for CARTIER products experience those products the way they are meant to be experienced. Toward that end, Cartier authorizes CARTIER-branded products to be sold only through the company's own boutiques and through authorized retail stores. Before a third-party retailer is permitted to sell

CARTIER products, the retailer is carefully reviewed to ensure that it is capable of delivering a purchasing experience that matches the luxury image of the CARTIER brand.

20.     Finally, to ensure that consumers remain satisfied with their CARTIER purchases long after the initial sale is made, each CARTIER product comes with an exclusive Cartier manufacturer's warranty.  Because Cartier cannot guarantee either the authenticity or handling of products that have been distributed or sold outside of its authorized sales channels, Cartier only provides warranty service for products sold through its authorized dealers.  Thus, each CARTIER piece sold through an authorized retailer comes accompanied with a Certificate of Authenticity on which the authorized retailer is requested to fill in the product's unique serial number, the authorized retailer's own name, and the consumer's date of purchase.  The accuracy of this information is certified with a hand stamp that is particular to the authorized retailer.  The Certificate of Authenticity is attached to or accompanied by material that details and explains the Cartier warranty to the consumer.  When a customer brings a CARTIER product to Cartier for service, Cartier relies on the information from the Certificate of Authenticity to determine whether its warranty is valid.

21.     As should be evident from the above description, Cartier undertakes considerable efforts to build a superior image for its CARTIER brand.  Cartier also invests significant time, money and effort to advertise and promote its products and name, spending millions of dollars a year on such efforts.  The combination of the highest quality products and extensive promotional activities have kept the CARTIER brand at the forefront of the luxury goods industry for decades and has resulted in millions of dollars of sales year after year.  As a result, the CARTIER mark has acquired enormous value and has become extremely well-known to the consuming public and trade as identifying and distinguishing the source of Cartier's products exclusively and

uniquely.  The CARTIER mark has come to represent enormous goodwill and is famous throughout the United States and the world.

II.    DEFENDANTS AND THEIR BUSINESSES

    A.    *Defendants' Businesses and Product Representations*

    22.    Through the websites associated with the domain names EditorsCloset.com and IvoryTrunk.com (together, the "Websites"), Defendants purport to provide "exclusive members only shopping," offering clothing, jewelry, wristwatches and accessories through what have been termed "flash sales," that is, product sales lasting only a limited time.  Defendants explain on the Websites that Defendants obtain their products from their "domestic and international contacts," which Defendants claim enables them to offer deeply discounted prices to their members.

    23.    Defendants repeatedly represent on both Websites that they offer only products that are "brand new."  By way of example, Defendants stress on both Websites:  "Rest assured, all of our products are BRAND NEW AND GENUINE…." (Emphasis in original.)  Similarly, both Websites include the representation:  "All of our Products [sic] are 100% authentic and brand new.  We do not sell replicas or refurbished items."  Upon information and belief, each individual product listing also repeats the "brand new" mantra.  True and correct printouts of some relevant select pages from the Websites are annexed hereto as Exhibit B.

    24.    Further, Defendants purport to hold themselves apart from "unscrupulous" websites selling fake and used merchandise.  Both Websites, for example, state:

> There are many unscrupulous and criminal enterprises on the internet dealing in fake merchandise.  [Website] proudly stands behind the authenticity of all its products.  All of our merchandise is brand new and guaranteed to be authentic.  . . . Selling counterfeit products as the genuine article is a violation of federal law.  All of our products are genuine and authentic.

B.    *Defendants' Misrepresentations Concerning the Nature of its CARTIER Merchandise*

25.    With respect to the CARTIER merchandise offered on the Websites, Defendants' representations that their products are "brand new" and not refurbished are false. Upon information and belief, Defendants repeatedly have offered for sale and sold CARTIER watches on the Websites that are, in fact, used and/or refurbished.

26.    Cartier, through its agents, has purchased a number of CARTIER watches from both Websites. Cartier's technical center conducted a thorough physical examination and inspection of each watch and, through this comprehensive process, determined – contrary to Defendants' strenuous assertions that they sell only "brand new" and not refurbished merchandise – that several of the CARTIER watches sold by Defendants through the Websites have in fact been refurbished.

27.    Among other things, Defendants' refurbished CARTIER watches bear evidence of improper repair and improper polishing and cleaning techniques, leading the watches to show evidence of physical damage. Some of the watches additionally bear non-repair related physical scars, including scratches, dirt accumulation and worn straps. These repaired and damaged watches are not "brand new" and are refurbished, contrary to Defendants' repeated claims.

28.    In addition, many of the watches purchased from Defendants by Cartier's agents were delivered in CARTIER-branded boxes that were torn or otherwise damaged.

29.    Upon information and belief, Defendants have sold used, refurbished and damaged CARTIER watches to consumers other than Cartier's agents.

30.    Upon information and belief, Defendants have shipped CARTIER watches in damaged packaging to consumers other than Cartier's agents.

C.    *Defendants' Interference with Cartier's Quality Control Mechanisms*

31.    Defendants have further degraded the CARTIER image and purchasing experience by including defaced and damaged Certificates of Authenticity with CARTIER products sold through the Websites.

32.    On almost all of the Certificates of Authenticity included with the CARTIER products sold to Cartier's agents by Defendants, the authorized retailer's information was physically removed by scratching the retailer's stamp from the heavy paper.  This gives the Certificates of Authenticity a damaged appearance.

33.    The obliteration of the retailer information from the Certificates of Authenticity also interferes with Cartier's ability to effectively manage and exercise control over its warranty program, since Cartier relies upon accurate Certificates of Authenticity to determine whether a particular product brought to it for service is covered under the manufacturer's warranty.

34.    Upon information and belief, Defendants supplied physically altered Certificates of Authenticity to consumers other than Cartier's agents.

35.    The sale and distribution of used, refurbished and/or damaged CARTIER watches, the sale of CARTIER watches in damaged packaging, and the physical alteration and damage of the Certificates of Authenticity accompanying the watches sold and distributed by Defendants, constitute material differences from authorized CARTIER products.

D.    *Defendants' Misrepresentations Concerning the Applicability of Cartier's Warranty*

36.    Finally, Defendants have compromised the Cartier image by failing to properly inform consumers that Cartier's warranty will not apply to CARTIER-branded watches Defendants sell through the Websites.

37.     Upon information and belief, listings for CARTIER watches on Defendants'
Website never state that Cartier's warranty will not apply.

38.     On the EditorsCloset.com site, some or all of the CARTIER watch listing pages
identify the name of a warranty provider.  However, Defendants do not make clear to consumers
on the product listing pages that the provided warranty is different from the warranty provided
on CARTIER products purchased through authorized channels.

39.     Upon information and belief, on the IvoryTrunk.com site, none of the CARTIER
watch listings have any statements regarding warranty coverage, whether provided by Cartier or
someone else.

40.     Upon information and belief, both Websites reveal to consumers only in one place
– on the "Satisfaction Guarantee" page – that the manufacturer's warranties may not apply to
products sold on the sites.  Specifically, the relevant web pages state, "[W]here we are not
'authorized' to sell a product we back it up with our own experienced warranty staff . . . ."
However, this "fine print" explanation is far from sufficient to communicate to consumers that
Cartier's warranty does not apply to CARTIER merchandise sold through the site, including
because Defendants never inform consumers that they are not authorized Cartier retailers.

41.     Moreover, despite the fact that Cartier's warranty does not apply to any product
sold by Defendants, Defendants ship Cartier's warranty booklet along with the CARTIER
products they sell.  The Cartier warranty book is literature that Cartier includes with all
CARTIER products sold through authorized retailers that explains in several languages the
application of the manufacturer's warranty to the purchased CARTIER product.  Defendants'
inclusion of the Cartier warranty with the CARTIER-branded products it sells again would lead
consumers to mistakenly believe that the Cartier warranty applies.

III.    EFFECT OF DEFENDANTS' UNLAWFUL ACTIVITIES

42.    In sum, Defendants have undertaken activities in connection with their sale of CARTIER products that misrepresent the nature and quality of such products.  Upon information and belief, the purpose of Defendants' deceptive practices is to heighten the appeal of Defendants' goods in the eyes of consumers.  Upon information and belief, the effects of Defendants' actions have been to damage the prestige of the CARTIER brand in the minds of consumers, and to deceive consumers into believing that there is no material difference between CARTIER brand products purchased from CARTIER and its authorized dealers and those sold by Defendants.

43.    Defendants' unauthorized sale of refurbished and damaged CARTIER products, while falsely representing to prospective consumers that such products are "brand new" and not refurbished, is likely to deceive, confuse and mislead prospective purchasers to think that Defendants' products are identical to their authentically distributed counterparts.  The likelihood of confusion, mistake and deception engendered by Defendants' sale of materially different CARTIER products is causing irreparable harm to Cartier and the goodwill associated with the CARTIER brand and the CARTIER mark.

44.    Purchasers perceiving a defect, lack of quality or any impropriety associated with the CARTIER products sold by Defendants are likely to mistakenly attribute such defects to Cartier.

45.    Upon information and belief, Defendants know, and at all relevant times knew, that they were selling CARTIER products that materially differ from authentic CARTIER products, and knew, too, that consumers were likely to believe, based on numerous

representations on Defendants' Websites, that the products are "brand new" when in fact they are

not, and that the products are not refurbished, when in fact they are.

46.     Upon information and belief, Defendants undertook the actions described herein

with the deliberate intent to create a false impression as to the nature of their CARTIER-branded

products.

47.     Defendants' conduct is intentionally fraudulent, malicious, willful and wanton.

Defendants' conduct has greatly injured – and, if not enjoined, will continue to greatly injure –

Cartier and the value of the CARTIER mark.

48.     Defendants' unlawful actions described above commenced many years after

Cartier began using the CARTIER mark, many years after the CARTIER mark had achieved

worldwide fame, and many years after the CARTIER mark was registered in the United States

Patent and Trademark Office.

49.     Defendants' aforesaid deceptive conduct is also harming the public.

## FIRST CLAIM FOR RELIEF:
## FALSE REPRESENTATION OF QUALITY
## IN VIOLATION OF 15 U.S.C. § 1125(a)(2)

50.     Cartier repeats and realleges Paragraphs 1 through 49 as if fully set forth herein.

51.     Despite stating that they sell only "brand new" and not refurbished merchandise,

Defendants have sold used, refurbished and/or damaged CARTIER products.

52.     Defendants' representations that their products are "brand new" and not

refurbished, coupled with their sale of used and refurbished merchandise, constitutes false and

misleading descriptions of facts and/or false and misleading representations of facts in

commercial advertising or promotion that misrepresent the nature, characteristics and/or qualities

of Defendants' products, services and commercial activities.

53.     Defendants' conduct described herein is willful and violates Section 43(a)(2) of the Lanham Act, 15 U.S.C. § 1125(a)(2).

54.     Upon information and belief, Defendants made these false and misleading representations of fact to induce consumers to purchase used and refurbished CARTIER products from Defendants while paying prices for and expecting to receive new merchandise.

55.     Defendants' conduct described herein is causing immediate and irreparable injury to Cartier and to its goodwill and reputation, and will continue to damage Cartier unless enjoined by this Court.

56.     Defendants' conduct as described herein also is deceiving and harming the public, and will continue to deceive and harm the public unless enjoined by this Court.

57.     Cartier has no adequate remedy at law.

### SECOND CLAIM FOR RELIEF:
### FEDERAL TRADEMARK INFRINGEMENT THROUGH SALE OF
### MATERIALLY DIFFERENT PRODUCTS
### IN VIOLATION OF 15 U.S.C. § 1114(1)

58.     Cartier repeats and realleges Paragraphs 1 through 57 as if fully set forth herein.

59.     By selling and distributing used, refurbished and/or damaged CARTIER watches, and/or watches in damaged packaging, and/or watches that are accompanied by defaced Certificates of Authenticity, and/or watches that lack a Cartier warranty, Defendants have sold and distributed CARTIER watches that materially differ from CARTIER products authorized for sale by Cartier.

60.     Cartier has not authorized Defendants to sell or distribute CARTIER products, including but not limited to the materially different CARTIER watches sold and distributed by Defendants.

61.    The sale of materially different CARTIER products by Defendants deprives Cartier of the ability to ensure the luxury quality of products bearing the CARTIER mark and to maintain the prestige associated with the CARTIER brand.

62.    Defendants' unauthorized sale of materially different CARTIER products is likely to cause confusion, mistake or deception as to the source or sponsorship of Defendants' materially different CARTIER products, as the public is likely to believe that the sale of such products has been approved by Cartier when such sales have not been so approved.

63.    Defendants' sale of materially different CARTIER products under the CARTIER mark constitutes a false designation of origin and false description or representation that Defendants' sale of such products is authorized by Cartier.

64.    Upon information and belief, Defendants' infringement of the federally registered CARTIER mark is willful and deliberate and undertaken with an intent to reap the benefit of the goodwill of Cartier and of its federally registered marks and the goodwill and reputation associated with these marks.  Defendants' actions described herein violate Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

65.    The aforesaid conduct of Defendants is causing immediate and irreparable injury to Cartier and to its goodwill and reputation, and will continue to damage Cartier unless enjoined by this Court.

66.    Defendants' conduct as described herein also is deceiving and harming the public, and will continue to deceive and harm the public unless enjoined by this Court.

67.    Cartier has no adequate remedy at law.

### THIRD CLAIM FOR RELIEF:
### UNFAIR COMPETITION THROUGH SALE OF
### MATERIALLY DIFFERENT PRODUCTS
### IN VIOLATION OF 15 U.S.C. § 1125(a)(1)(A)

68.    Cartier repeats and realleges Paragraphs 1 through 67 as if fully set forth herein.

69.    By selling and distributing damaged, refurbished and/or used CARTIER watches, and/or watches in damaged packaging, and/or watches that are accompanied by defaced Certificates of Authenticity, and/or watches that lack a Cartier warranty, Defendants have sold and distributed CARTIER watches that materially differ from CARTIER products authorized for sale by Cartier.

70.    Cartier has not authorized Defendants to sell or distribute CARTIER products, including but not limited to the materially different CARTIER watches sold and distributed by Defendants.

71.    The sale of materially different CARTIER products by Defendants deprives Cartier of the ability to ensure the luxury quality of products bearing the CARTIER mark and to maintain the prestige associated with the CARTIER brand.

72.    Defendants' sale of materially different CARTIER products under the CARTIER mark constitutes a false designation of origin and a false description or representation that Defendants' sale of such products is authorized by Cartier.

73.    Upon information and belief, Defendants' acts of unfair competition are willful and deliberate and undertaken with the intent to reap the benefit of the goodwill and reputation associated with the CARTIER mark.

74.    Defendants' actions described herein violate Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

75.     The aforesaid conduct of Defendants is causing immediate and irreparable injury to Cartier and to its goodwill and reputation, and will continue to damage Cartier unless enjoined by this Court.

76.     Defendants' conduct as described herein also is deceiving and harming the public, and will continue to deceive and harm the public unless enjoined by this Court.

77.     Cartier has no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF:
### FEDERAL TRADEMARK DILUTION THROUGH SALE OF
### MATERIALLY DIFFERENT PRODUCTS
### IN VIOLATION OF 15 U.S.C. § 1125(c)

78.     Cartier repeats and realleges Paragraphs 1 through 77 as if fully set forth herein.

79.     As a result of extensive use and promotion of the CARTIER mark and the goods and services offered thereunder by Cartier for more than 160 years, the CARTIER mark is famous throughout the United States, is highly distinctive of Cartier's goods and services, and is widely recognized among the consuming public as a designation of source of Cartier's goods and services.

80.     The CARTIER mark became famous long before Defendants commenced their activities described herein.

81.     Defendants' commercial use of the CARTIER mark for goods that are materially different from authorized CARTIER products has diluted and/or is likely to dilute the distinctive quality of the CARTIER mark by impairing the distinctiveness of the CARTIER mark, thereby lessening the capacity of that mark to identify and distinguish Cartier exclusively, and by tarnishing Cartier through association with Defendants' goods which are materially different. Through Defendants' acts, Cartier's reputation has been removed from its power and control, in

that deficiencies in or complaints about Defendants' CARTIER-branded goods will redound to the harm of Cartier.

82.     Upon information and belief, the foregoing acts were done willfully and deliberately and with an intent to dilute the distinctiveness of the CARTIER mark in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

83.     Defendants' conduct described herein is causing immediate and irreparable injury to Cartier and to its goodwill and reputation, and will continue to damage Cartier unless enjoined by this Court.

84.     Defendants' conduct as described herein also is deceiving and harming the public, and will continue to deceive and harm the public unless enjoined by this Court.

85.     Cartier has no adequate remedy at law.

### FIFTH CLAIM FOR RELIEF:
### FALSE ADVERTISING
### IN VIOLATION OF N.Y. GEN. BUS. LAW § 350

86.     Cartier repeats and realleges paragraphs 1 through 85 as if fully set forth herein.

87.     As set out above, Defendants have engaged in advertising that is misleading in a material respect.  As such, Defendants' actions constitute false advertising in violation of Section 350 of the New York General Business Law.

88.     Upon information and belief, Defendants engaged in false advertising in order to induce consumers to purchase used, refurbished and/or damaged CARTIER products from Defendants.

89.     Defendants' conduct described herein is causing immediate and irreparable injury to Cartier and to its goodwill and reputation, and will continue to damage Cartier unless enjoined by this Court.

90.     Defendants' conduct described herein is also deceiving and harming the public, since Defendants are inducing consumers to make purchases believing that the products are "brand new" and not refurbished, yet these unsuspecting consumers are receiving used, refurbished and/or damaged goods from Defendants.

91.     Cartier has no adequate remedy at law.

**SIXTH CLAIM FOR RELIEF:
UNFAIR COMPETITION THROUGH THE SALE OF
MATERIALLY DIFFERENT PRODUCTS
IN VIOLATION OF THE COMMON LAW OF NEW YORK**

92.     Cartier repeats and realleges Paragraphs 1 through 91 as if fully set forth herein.

93.     By selling and distributing damaged, refurbished and/or used CARTIER watches, and/or watches in damaged packaging, and/or watches that are accompanied by defaced Certificates of Authenticity, and/or watches that lack a Cartier warranty, Defendants have sold and distributed CARTIER watches that materially differ from CARTIER products authorized for sale by Cartier.

94.     Cartier has not authorized Defendants to sell or distribute CARTIER products, including but not limited to the materially different CARTIER watches sold and distributed by Defendants.

95.     The material alteration of CARTIER products by Defendants deprives Cartier of the ability to ensure the luxury quality of products bearing the CARTIER mark and to maintain the prestige associated with the CARTIER brand.

96.     Defendants' sale of materially different CARTIER products under the CARTIER mark constitutes a false designation of origin and false description or representation that Defendants' sale of such products is authorized by Cartier.

97.     Upon information and belief, Defendants' acts of unfair competition are willful and deliberate and undertaken with the intent to reap the benefit of the goodwill and reputation associated with the CARTIER mark.

98.     Defendants' actions described herein constitute unfair competition under the common law of the State of New York.

99.     The aforesaid conduct of Defendants is causing immediate and irreparable injury to Cartier and to its goodwill and reputation, and will continue to damage Cartier unless enjoined by this Court.

100.    Defendants' conduct as described herein also is deceiving and harming the public, and will continue to deceive and harm the public unless enjoined by this Court.

101.    Cartier has no adequate remedy at law.

**SEVENTH CLAIM FOR RELIEF:**
**TRADEMARK DILUTION THROUGH THE SALE OF**
**MATERIALLY DIFFERENT PRODUCTS**
**IN VIOLATION OF N.Y. GEN. BUS. LAW § 360-*l***

102.    Cartier repeats and realleges paragraphs 1 through 101 as if fully set forth herein.

103.    The CARTIER mark is a distinctive, federally registered trademark.  As a result of Cartier's extensive and exclusive use of the CARTIER mark in connection with its products for more than 160 years, the CARTIER mark has become famous and is widely recognized among the consuming public as a designation of source of Cartier's goods.  The CARTIER mark became famous long before Defendants' unlawful activities commenced.

104.    Defendants' commercial use of the CARTIER mark for goods that are materially different from authorized CARTIER products has diluted and/or is likely to dilute the distinctive quality of the CARTIER mark by lessening the capacity of that mark to exclusively identify and distinguish Cartier and its goods, and by tarnishing Cartier through association with Defendants'

goods which are materially different.  Through Defendants' acts, Cartier's reputation has been removed from its power and control, in that deficiencies in or complaints about Defendants' CARTIER-branded goods will redound to the harm of Cartier.

105.    Upon information and belief, the foregoing acts were done willfully and deliberately and with an intent to dilute the distinctiveness of the CARTIER mark in violation of Section 360-*l* of the New York General Business Law.

106.    Defendants' conduct described herein is causing immediate and irreparable injury to Cartier and to its goodwill and reputation, and will continue to damage Cartier unless enjoined by this Court.

107.    Defendants' conduct as described herein also is deceiving and harming the public, and will continue to deceive and harm the public unless enjoined by this Court.

108.    Cartier has no adequate remedy at law.

### EIGHTH CLAIM FOR RELIEF:
### DECEPTIVE TRADE PRACTICES
### IN VIOLATION OF N.Y. GEN. BUS. LAW § 349

109.    Cartier repeats and realleges paragraphs 1 through 108 as if fully set forth herein.

110.    By reason of the acts set forth above, Defendants have been and are engaged in deceptive acts or practices in the conduct of a business, trade or commerce, in violation of Section 349 of the New York General Business Law.

111.    Upon information and belief, Defendants' conduct is willful.

112.    Upon information and belief, by reason of the deception caused by the acts set forth above, the public is being deceived and harmed, and will continue to be deceived and harmed unless enjoined by this Court.

113.   Defendants' conduct described herein is causing immediate and irreparable injury to Cartier and to its goodwill and reputation, and will continue to damage Cartier unless enjoined by this Court.

114.   Cartier has no adequate remedy at law.

WHEREFORE, Cartier demands judgment as follows:

1.   That a permanent injunction be issued enjoining Defendants, any of their respective officers, agents, privies, shareholders, principals, directors, licensees, attorneys, servants, employees, affiliates, subsidiaries, successors and assigns, and all those persons in concert or participation with any of them who receives actual notice of the order by personal service or otherwise, from:

   (a)   using any false designation of origin or false or misleading representation of fact, or performing any act, which can, or is likely to, lead members of the trade or public to believe that Defendants are associated with Cartier or that Cartier authorizes, licenses, sponsors or otherwise approves the sale or distribution of CARTIER-branded products by Defendants;

   (b)   using any false or misleading representations of fact, or performing any act, which can, or is likely to, lead members of the trade or public to hold false beliefs concerning the nature, qualities or characteristics of the CARTIER-branded products advertised, promoted, offered for sale, sold or distributed by Defendants;

   (c)   using any false or misleading representations of fact, including any omissions of facts, or performing any act, which can, or is likely to, lead members of the trade or public to believe that CARTIER-branded products offered, sold and distributed by Defendants are backed by a manufacturer's warranty offered by Cartier;

(d)     removing, obscuring or otherwise defacing an authorized retailer stamp on any

Cartier Certificate of Authenticity, or advertising, promoting, offering for sale,

selling or distributing any CARTIER product accompanied by a defaced Cartier

Certificate of Authenticity;

(e)     using any of Cartier's trademarks or trade names or trade dress, including but not

limited to those identified in the Complaint, or any simulation, reproduction, copy,

colorable imitation or confusingly similar variation of any of Cartier's trademarks or

trade names or trade dress on or in connection with any advertisement, promotion,

offering for sale, sale, or distribution of CARTIER-branded products that differ in

any material way from CARTIER products offered or sold through authorized

channels;

(f)     processing, packaging, importing or transporting any CARTIER-branded products

that differ in any material way from CARTIER products offered or sold through

authorized channels;

(g)     engaging in any other activity constituting unfair competition with Cartier, or

constituting an infringement of any of Cartier's trademarks or trade names or

trade dress;

(h)     engaging in any activity that dilutes or tarnishes, or is likely to dilute or tarnish, any

of Cartier's trademarks or trade names or trade dress;

(i)     assisting, aiding, or abetting any other person or business entity in engaging in or

performing any of the activities referred to in subparagraphs (a) through (h) above

or taking any action that contributes to any of the activities referred to in

subparagraphs (a) through (h) above.

2.      That Defendants be directed to take such other action as the Court may deem appropriate to prevent the trade and public from deriving the erroneous impression that any goods advertised, promoted, offered, sold or distributed by Defendants are authorized by Cartier or are identical to goods advertised, promoted, offered, sold or distributed through authorized retailers.

3.      That Defendants be ordered, at their own expense, to deliver up immediately for destruction their entire inventory of goods bearing the CARTIER mark that differ materially from authorized CARTIER goods.

4.      That Cartier be awarded monetary relief, including Defendants' profits; Cartier's actual damages; trebled damages and/or increased profits as provided to 15 U.S.C. § 1117(a); trebled profits or damages, or, if Cartier elects, statutory damages as the Court considers just, up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed, as provided by 15 U.S.C. § 1117(b) & (c); and punitive and/or enhanced damages as provided for under applicable law.

5.      That Cartier be awarded interest, including pre-judgment interest, on the foregoing sums.

6.      That Cartier be awarded its costs in this civil action, including reasonable attorneys' fees and expenses, pursuant to 15 U.S.C. § 1117(a) and other applicable laws.

7.      That Cartier be awarded such other and further relief as the Court may deem just and proper.

Dated:  August 26, 2010

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By
    John P. Margiotta
    Laura Popp-Rosenberg
866 United Nations Plaza
New York, New York  10017
Tel: (212) 813-5900
*jmargiotta@frosszelnick.com*
*lpopp-rosenberg@frosszelnick.com*

*Attorneys for Plaintiffs*

**EXHIBIT A**

**Thank you for your request. Here are the latest results from the TARR web server.**

**This page was generated by the TARR system on** 2010-08-25 17:52:00 ET

**Serial Number:** 72146163 Assignment Information        Trademark Document Retrieval

**Registration Number:** 759201

**Mark (words only):** CARTIER

**Standard Character claim:** No

**Current Status:** This registration has been renewed.

**Date of Status:** 2003-09-12

**Filing Date:** 1962-06-08

**Transformed into a National Application:** No

**Registration Date:** 1963-10-29

**Register:** Principal

**Law Office Assigned:** (NOT AVAILABLE)


**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at TrademarkAssistanceCenter@uspto.gov**

**Current Location:** 830 -Post Registration

**Date In Location:** 2009-03-11

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

1. CARTIER INTERNATIONAL A.G.

**Address:**
CARTIER INTERNATIONAL A.G.
HINTERBERGSTRASSE 22, POSTFACH 61
6312 STEINHAUSEN
Switzerland
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Switzerland

---

## GOODS AND/OR SERVICES

**U.S. Class:** 027 (International Class 014)
**Class Status:** Active
Watches and Clocks
**Basis:** 1(a)
**First Use Date:** 1859-00-00
**First Use in Commerce Date:** 1859-00-00

---

## ADDITIONAL INFORMATION

**Section 2(f)**

**Prior Registration Number(s):**
411975

---

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

---

## PROSECUTION HISTORY

**NOTE: To view any document referenced below, click on the link to "Trademark Document Retrieval" shown near the top of this page.**

2010-08-04 - Automatic Update Of Assignment Of Ownership

2009-12-16 - Notice Of Suit

2009-01-27 - Case File In TICRS

2006-10-04 - Assignment Of Ownership Not Updated Automatically

2006-08-30 - Review Of Correspondence Complete

2003-09-29 - PAPER RECEIVED

2003-09-12 - Second renewal 10 year

2003-09-12 - Section 8 (10-year) accepted/ Section 9 granted

2003-06-23 - Combined Section 8 (10-year)/Section 9 filed

2003-06-23 - PAPER RECEIVED

1984-10-25 - Section 8 (6-year) accepted & Section 15 acknowledged

1983-10-29 - First renewal

1983-10-11 - First renewal

---

## ATTORNEY/CORRESPONDENT INFORMATION

(NOT AVAILABLE)

---

**Thank you for your request. Here are the latest results from the <u>TARR web server.</u>**

**This page was generated by the TARR system on** 2010-08-25 17:53:12 ET

**Serial Number:** 71471859 <u>Assignment Information</u>        <u>Trademark Document Retrieval</u>

**Registration Number:** 411975

**Mark**



**(words only):** CARTIER

**Standard Character claim:** No

**Current Status:** This registration has been renewed.

**Date of Status:** 2005-01-05

**Filing Date:** 1944-07-01

**Transformed into a National Application:** No

**Registration Date:** 1945-02-13

**Register:** Principal

**Law Office Assigned:** (NOT AVAILABLE)

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at <u>TrademarkAssistanceCenter@uspto.gov</u>**

**Current Location:** 40S -Scanning On Demand

**Date In Location:** 2009-01-27

---

### LAST APPLICANT(S)/OWNER(S) OF RECORD

---

1. CARTIER INTERNATIONAL A.G.

**Address:**

CARTIER INTERNATIONAL A.G.
HINTERBERGSTRASSE 22, POSTFACH 61
6312 STEINHAUSEN
Switzerland
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Switzerland

---

## GOODS AND/OR SERVICES

**U.S. Class:** 027 (International Class 014)
**Class Status:** Active
Watches and Clocks and Wrist Watches with Wrist Straps and Bracelets Attached for Securing the
Same on the Wrist of the Wearer, and Traveling Clocks and Watches with Covers of Leather, Fabric
and the Like for Protecting Them While Traveling
**Basis:** 1(a)
**First Use Date:** 1859-00-00
**First Use in Commerce Date:** 1859-00-00

---

## ADDITIONAL INFORMATION

(NOT AVAILABLE)

---

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

---

## PROSECUTION HISTORY

**NOTE: To view any document referenced below, click on the link to "Trademark Document
Retrieval" shown near the top of this page.**

2010-08-04 - Automatic Update Of Assignment Of Ownership

2009-12-16 - Notice Of Suit

2009-01-27 - Case File In TICRS

2006-10-04 - Assignment Of Ownership Not Updated Automatically

2005-01-05 - Third renewal 10 year

2005-01-05 - Section 8 (10-year) accepted/ Section 9 granted

2004-11-17 - Combined Section 8 (10-year)/Section 9 filed

2004-11-17 - PAPER RECEIVED

2003-09-29 - PAPER RECEIVED

1985-02-13 - Second renewal

1984-08-20 - Section 9 filed/check record for Section 8

---

## ATTORNEY/CORRESPONDENT INFORMATION

**Attorney of Record**
HELEN M. O'SHAUGHNESSY

**Correspondent**
HELEN M. O'SHAUGHNESSY
2 EAST 52ND STREET
NEW YORK, NY 10022

---

**EXHIBIT B**



Ivory Trunk Member Exclusive Savings on the Finest Brands
Case 1:10-cv-06390-LBS Document 1 Filed 08/26/10 Page 34 of 36
Page 1 of 1

# IVORY TRUNK

time sensitive, member exclusive savings on the finest brands

Welcome **Laura**, not you?

What is Ivory Trunk? | Contact Us | Cart | SignOut

TRUNK SHOWS          MY ACCOUNT          INVITE A FRIEND          SHIPPING

Back to Customer Service



## IvoryTrunk.com Authenticity Guarantee

There are many unscrupulous and criminal enterprises on the internet dealing in fake merchandise. IvoryTrunk proudly stands behind the authenticity of all its products. All of our merchandise is brand new and guaranteed to be authentic. In order to provide our customers with the hottest trends in luxury fashion, IvoryTrunk works directly with manufacturers and/or reputable and legitimate retailers and distributors. As a result of the trusted relationships we have with our vendors, you can shop with confidence. Selling counterfeit products as the genuine article is a violation of federal law. All of our products are genuine and authentic.

### Who We Are

Our core philosophy is to provide our members with the finest brands in the world at the ABSOLUTE best pricing in the world. Otherwise you could be shopping on other large non-member websites instead of ours.

We sometimes get inquiries regarding whether we are "Authorized" to sell the products we sell. "Authorized" dealers are required to sell watches; sunglasses; handbags; apparel and accessories within the manufacturers' pricing guidelines. Even if a dealer wanted to lower his prices - even if he could manage to cut his costs - his hands are tied if he's accepted the status of being an "authorized dealer". There are several brands we feature on EditorsCloset that we are not "authorized" to sell by the manufacturer because we are committed to selling our brands at the lowest prices.

We have been selling branded products exclusively on the Internet for several years. We buy from "authorized" dealers and large worldwide distributors. Our domestic and international contacts enable us to consistently buy at the lowest possible prices. This is why we can offer you such exceptional savings. Hundreds of thousands of customers have purchased watches, sunglasses and many other products from our websites for the last decade and we have proven without any shadow of a doubt that consumers rather get an amazing deal than be overcharged by "Authorized" dealers.

Rest assured, all of our products are BRAND NEW AND GENUINE, and where we are not "authorized" to sell a product we back it up with our own experienced warranty staff and/or our return policy. Keep shopping with confidence and at the lowest prices in the world!

We work very hard to buy our products at the lowest possible cost. The result: you get genuine luxury merchandise on an exclusive basis and at exceptionally low prices.

Back to Customer Service

Privacy Policy | Terms of Use

Welcome Laura! (not Laura? Click Here) sign out

Home | Company | Account | Help | Shopping Cart

Back to Customer Service

# EditorsCloset.com Hassle Free Return Policy

All of our Products are 100% authentic and brand new. We do not sell replicas or refurbished items. Every product we sell is equipped with a security tag which must remain intact if you wish to return it so before you use your product, please make sure it is what you ordered and that it is absent of any 'Out of Box' defects. Also, please make sure the given product is to your liking because once you remove the security tag or wear or modify the product, it is not returnable and is solely subject to the warranty provided.

If you find that there is something wrong with your product or it does not meet your expectations, please contact us to obtain an RFI number within 14 days of your purchase. After completely reading this policy, you can obtain an RFI number by sending us a request via email to Customer Service. Our return policy is as follows:

We will issue a store credit of your purchase price, excluding your original shipping, taxes and handling charges.

## Accepted Items:

EditorsCloset.com will accept returns on ready-to-wear items, footwear, Accessories (handbags, eyewear, small leather goods, umbrellas, scarves, gloves, belts), Jewelry, Swimwear, Intimate Apparel and Hosiery, Crystal Ware and Beauty and Fragrances for account credit only.

EditorsCloset.com must receive the merchandise within 14 days of delivery. Because our great values change frequently as we locate new and exciting deals for you, our 14-day return policy gives you time to return a purchase, while helping us to keep our merchandise assortment fresh and in season.

All returns must still have the security tag affixed as it was when shipped. It must not be worn, sized, used or altered in any way. Products showing any sign of wear cannot be returned. If they do show wear, they will be returned immediately at the customer's expense and no refund will be granted.

Please try on your shoes and ready-to-wear items before removing the merchandise tag. Any item with an altered, broken, or damaged merchandise tag will not be accepted.

Freight charges for all non-defective returns will be the responsibility of the customer. Returns must be shipped via a prepaid traceable carrier, such as UPS or FedEx. In case of loss or damage, the customer is liable.

We will email you to confirm receipt of your returned package. After we have received your return, inspected it, and approved it for a store credit, we will credit your EditorsCloset.com account with the approved refund amount.

## General Merchandise Shipping Address:

EditorsCloset.com
101 South State Rd 7
Suite 201
Hollywood, FL 33023

If your items are eligible for return, please log on to "request an RFI" or send an email to our return department at rfi@EditorsCloset.com this e-mail address is being protected from spam bots, you need JavaScript enabled to view it for a Return Authorization number.

A request for an RFI# must be made within 14 days of order delivery and be returned to us no later than 6 days after an RFI# has been issued. There is an extension to this return period during Nov 1st through Dec 31st (see holiday return policy for details). If a package arrives without the RFI# clearly visible on the outside, it will be refused by our receiving department.

- Special orders cannot be returned unless they are found to be defective. Special orders are marked as such.

- All returns must have non-damaged packaging ( unopened) and be in resalable condition, containing all original contents (Instruction manuals, Warranty Cards, Factory Tags, etc.).

- If you received a free gift with the product you are returning, you will need to return the gift or EditorsCloset.com will charge you for the value of the gift.

- If the product is worn, visibly used or the tag is removed, you cannot return the product. You are, however, fully protected under the warranty and must work with the warranty provider to obtain either a replacement or a repair.

**Late Returns**

We can accept returned merchandise for up to 14 days from the date of delivery. Unfortunately, items received after the 14-day return period cannot be accepted for a refund, and your package will be returned to you.

**No Exchanges**

EditorsCloset.com strives to offer you great merchandise up to 75% off. In order to do so, we may not always carry large quantities or every size. Therefore, we unfortunately cannot process exchanges.

**Returning Heavy or Bulky Items**

Certain products have special return instructions due to their size or weight. To return them, please contact Customer Service for return instructions.

Back to Customer Service

Copyright 2009-2010 © Editors' Closet